IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALICIA LAWSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:18-00054-N |
| | ) | |
| NANCY A. BERRYHILL, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alicia Lawson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 20, 21, 26) and those portions of the administrative record (Docs. 14, 17-1) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 29, 30). The parties jointly waived the opportunity for oral argument. (*See* Docs. 28, 31).

## I. *Background*

Lawson filed an application for a period of disability and DIB with the Social Security Administration ("SSA") on February 8, 2013, and an application for SSI on February 13, 2013. Both applications alleged disability beginning May 25, 2012.[2] After her applications were initially denied, Lawson requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on September 29, 2014. On January 27, 2015, the ALJ issued an unfavorable decision on Lawson's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 110 – 127).

Lawson sought review of the ALJ's January 2015 unfavorable decision with the Appeals Council for the Office of Disability Adjudication and Review. On June 28, 2016, the Appeals Council issued an order vacating that unfavorable decision and remanding Lawson's case to the ALJ with instructions to consider certain evidence and issues. (*See* R. 132 – 135). A different ALJ was assigned to hear Lawson's case following remand from the Appeals Council. The second ALJ held a hearing on October 19, 2016, and on March 1, 2017, issued a second unfavorable

---

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

decision on Lawson's applications. (*See* R. 12 – 25).

The Commissioner's decision on Lawson's applications became final when the Appeals Council denied her request for review of the second unfavorable ALJ decision on December 28, 2017. (R. 1 – 5). Lawson subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative

---

cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).
     Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

*Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC")

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

economy.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record."  *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).  *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record.  Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).  "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision."  *Doughty*, 245 F.3d at 1278.  But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram*, 496 F.3d at 1262.  Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the

ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.  *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Lawson met the applicable insured status requirements through March 31, 2017, and that she had not engaged in substantial gainful activity since May 25, 2012, the alleged disability onset date. (R. 17).  At Step Two, the ALJ determined that Lawson had the following severe impairments: a bipolar disorder, and obesity.  (R. 17 – 18).  At Step Three, the ALJ found that Lawson did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments.  (R. 18 – 20).

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant

> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Lawson had the RFC "to perform a full range of work at all exertional levels[6] but with the following nonexertional limitations: no climbing of ladders, ropes or scaffolds, no working at unprotected heights or around hazardous machinery, only unskilled work with few workplace changes and no assembly line production requirements, no direct interaction with the general public, and work that can be around coworkers throughout the day but with only occasional interaction with coworkers." (R. 20 – 23).

Based on this RFC and the testimony of a vocational expert, the ALJ determined that Lawson was unable to perform any past relevant work. (R. 23). At Step Five, based on additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Lawson could perform given her RFC, age, education, and work experience. (R. 23 - 24). Thus, the ALJ found that Lawson was not disabled under the Social Security Act. (R. 24 - 25).

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

## IV. *Analysis*

Lawson's overall argument is that the ALJ did not give appropriate consideration to the effect of her bipolar disorder on her ability to work. The undersigned is not persuaded.

First, the ALJ gave adequate consideration to evidence of Lawson's three manic/psychotic episodes resulting in hospitalization. Lawson claims these episodes show that she does not have "the ability to maintain mentally or emotionally…" (Doc. 21 at 9). The ALJ, however, noted that each of those episodes was precipitated by a period where Lawson was not compliant with her medication regimen. The ALJ also found that, "[f]rom the records of [Lawson]'s hospitalizations,…after a short hospitalization and compliance with treatment, [Lawson] is capable of returning to functioning in a manner consistent with" the RFC. (R. 23). *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. This finding must be supported by substantial evidence." (quotation and some citations omitted)).

Lawson disputes the ALJ's finding that non-compliance with her medication was to blame for her episodes, claiming that "at the time of [her] manic break in October 2014, she was in regular treatment and appeared during examinations to be doing well[,]" and that "[t]he stress of [a recent job] interview itself was sufficient

to cause a break." (Doc. 21 at 7 (citing R. 366 – 390)). However, the undersigned agrees with the Commissioner that this is an inaccurate representation of the evidence. Lawson's treating psychiatrist, Dr. John Dorsey, wrote in a brief note dated October 8, 2014, that Lawson had undergone an "episode manic with psychotic features approximately two months ago when the patient was scheduled to go for interview for a job." (R. 366, duplicated at R. 384). Per Dr. Dorsey, Lawson "missed the interview and later showed up in [his] office presenting with significant manic symptoms and psychotic symptoms." (R. 366).

Thus, the Commissioner is correct that "there was no documented exacerbation in October 2014" and that the episode instead happened approximately two months prior, in August 2014. (*See* Doc. 26 at 8 – 9). The ALJ expressly discussed Lawson's August 2014 "episode of decompensation" and resulting "partial hospitalization" from August 22 through September 3, 2014, noting that Lawson's "pharmacy records suggest that she had only recently resumed taking her medications." (R. 22). The ALJ further discussed evidence of Lawson's medication non-compliance prior to the August 2014 episode as follows:

> On July 14, 2014, Dr. Dorsey noted the claimant was doing "pretty well" although he was skeptical that she was taking her medication as prescribed (2 mg of Risperdal twice a day). The mental status examination was normal (Exhibit 11F). Frank's Pharmacy records show that the claimant had filled prescriptions for Risperdal (Risperidone) 60 2 mg tablets on August 9, 2013, 60 2 mg tablets on October 5, 2013, and not again until July 14, 2014, the date on which she saw Dr. Dorsey (Exhibit 10F). Although the claimant told Dr. Dorsey that she had obtained her medication from another pharmacy, CVS, there is only evidence that she filled a prescription for 30 Risperidone tablets at CVS, on July 16, 2013 (Exhibit 9F), and prior to

that, 28 tablets on May 28, 2012, 28 tablets on July 7, 2012, and 60 tablets on August 2, 2012 (Exhibit 4F). Thus, the record shows she is not medically complaint [sic].

(R. 21). The ALJ also noted that, after the August 2014 partial hospitalization, there was "no evidence of any treatment from September 2014 until January 2016[,]" when Lawson was again hospitalized, admitting that "she was non-compliant with her medications from 'some time'…" (R. 22). Reviewing the administrative record, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Lawson's mental episodes were adequately managed by compliance with her medication regimen.

Second, the ALJ properly gave less than substantial or considerable weight to the medical opinion of treating physician Dr. Dorsey. In his October 8, 2014 note, after describing Lawson's August 2014 episode, Dr. Dorsey also offered the following opinion: "Though Ms. Lawson can do moderately well for periods from a functional standpoint, I believe that her propensity for a manic break and psychotic break, especially under periods of pressure and stress significantly limited her ability to maintain regular full-time employment." (R. 366). The ALJ gave that opinion only "partial weight," noting:

> Most recently,…the claimant has demonstrated an ability to manage her psychologically-based symptoms by complying with prescribed treatment…As noted above, the claimant was doing well in January and July 2014. She had an episode of decompensation in August 2014, and pharmacy records suggest that she had only recently resumed taking her medications. There is no evidence of any treatment from September 2014 until January 2016; the claimant testified that she did not seek any treatment in 2015. Thus, there is no evidence that this

> inability to tolerate normal stress lasted for a period of 12 continuous months.

(R. 19, 22). "The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). Here, the ALJ found "good cause" to only give partial weight to Dr. Dorsey's October 8, 2014 opinion because it was not bolstered by the record evidence indicating that her manic and psychotic "breaks" resulted from non-compliance with her medications. *See id.* ( " 'good cause' exists when[, *inter alia*,] the…treating physician's opinion was not bolstered by the evidence…").[7] Substantial evidence supports that "good cause." *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) ("[I]f an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." (citing *Moore*, 405 F.3d at 1212)); *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished) (same).[8]

---

[7] Recently, the SSA substantially revised the regulations governing how it considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Lawson's subject applications. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[8] Lawson also complains that the ALJ failed to "address the issue of interaction with supervisors; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek; the ability to perform at a consistent pace; or the ability to accept instructions and respond appropriately to criticism from supervisors" at Step Four. (Doc. 21 at 7). However, it is reasonable to infer

Because Lawson has failed to show reversible error, the Commissioner's final decision denying Lawson benefits is due to be **AFFIRMED**.

V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Lawson's February 8, 2013 application for a period of disability and DIB, and her February 13, 2013 application for SSI, is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 27th day of February 2019.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**

---

that, by not including those limitations in the RFC, the ALJ found that Lawson's ability to perform those tasks was not impaired, and Lawson cites no authority indicating an ALJ must mechanically discuss and discard every possible limitation in a decision.

Lawson also claims that "[t]he ALJ herself found Ms. Lawson unable to maintain independent functioning[,]" based on the following passage from the ALJ's decision: "On July 22, 2013, Dr. Dorsey noted that the claimant had been living with her brother and mother but was considering moving away with her boyfriend. He noted that she was applying for employment (Exhibit 8F). This is indicative of inability to function outside a highly structured setting and to adapt to changes in the environment or to demands that are not already part of her daily life. Do not mighty [sic]…" (R. 19). Given that the purported finding of an "inability to function" is inconsistent with both the evidence discussed prior to that statement, and the context in which it was made – specifically, in finding that Lawson did not meet the "paragraph C" criteria for mental impairments at Step Three (*see* R. 19) – it is apparent that "indicative of inability to function" is a typographical error that should have read "indicative of an ability to function." Lawson's reliance on that passage in claiming that the ALJ's decision is internally inconsistent is therefore misplaced.